UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOHN ROBERTS,

                              Plaintiff,

        v.                                                Civil No. 14-CV-00369-RJA-LGF

FRESENIUS KABI USA LLC,

                              Defendant.

# MEMORANDUM OF LAW
# IN SUPPORT OF DEFENDANT'S SUMMARY JUDGMENT MOTION

**HODGSON RUSS LLP**
*Attorneys for Defendant*
Joseph S. Brown, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .....................................................................................................2

ARGUMENT ..........................................................................................................2

POINT I.   ROBERTS CANNOT ESTABLISH A HOSTILE WORK
ENVIRONMENT BASED ON AGE ......................................................3

POINT II.   ROBERTS' AGE DISCRIMINATION CLAIM CANNOT SURVIVE
SUMMARY JUDGMENT .....................................................................5

A.   ROBERTS MAY NOT ESTABLISH AN INFERENCE OF
DISCRIMINATION USING STRAY REMARKS................................7

B.   ROBERTS MAY NOT ESTABLISH A PRIMA FACIE CASE OF AGE
DISCRIMINATION WITH STATISTICAL EVIDENCE ...................9

C.   FRESENIUS KABI HAD A LEGITIMATE, NON-DISCRIMINATORY
REASON FOR TERMINATING ROBERTS WHEN HE FALSIFIED A
COMPANY DOCUMENT.....................................................................9

D.   ROBERTS HAS NO EVIDENCE TO SUPPORT A FINDING THAT HIS
TERMINATION WAS A PRE-TEXT FOR AGE DISCRIMINATION.............11

POINT III.   ROBERTS HAS NO EVIDENCE TO SUPPORT HIS RETALIATION
CLAIM...................................................................................................13

POINT IV.   ROBERTS' OVERTIME CLAIMS UNDER FEDERAL AND STATE
LAW CANNOT SURVIVE SUMMARY JUDGMENT .....................16

A.   ROBERTS WAS PAID ON A SALARY BASIS .................................19

B.   ROBERTS' PRIMARY DUTY WAS MANAGEMENT OF THE
ASEPTIC PREPARATION AREA.......................................................19

C.   ROBERTS DIRECTLY SUPERVISED THE WORK OF EIGHT TO TEN
EMPLOYEES........................................................................................20

D.   ROBERTS MADE SUGGESTIONS AND RECOMMENDATIONS
REGARDING A VARIETY OF EMPLOYMENT DECISIONS........20

CONCLUSION.................................................................................21

i

# TABLE OF AUTHORITIES

PAGE

**FEDERAL CASES**

*Abdu-Brisson v. Delta Air Lines, Inc.*,
    239 F.3d 456 (2d Cir. 2001)....................................................................................3

*Beauchamp v. Flex-N-Gate LLC*,
    357 F. Supp. 2d 1010 (E.D. Mich. 2005)...............................................................21

*Bickerstaff v. Vassar College*,
    196 F.3d 435 (2d Cir. 1999)....................................................................................3

*Brennan v. Metropolitan Opera Ass'n, Inc.*,
    192 F.3d 310 (2d Cir. 1999)....................................................................................4

*Burson v. Viking Forge Corp.*,
    661 F. Supp. 2d 794 (N.D. Ohio 2009)..................................................................21

*Cai v. Wyeth Pharm., Inc.*,
    2012 U.S. Dist. LEXIS 38484 (S.D.N.Y. Mar. 19, 2012) .....................................11

*Callistro v. Cabo*,
    2013 U.S. Dist. LEXIS 11176 (S.D.N.Y. Jan. 25, 2013) .......................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).........................................3

*Clougher v. Home Depot U.S.A., Inc.*,
    696 F. Supp. 2d 285 (E.D.N.Y. 2010) ..................................................................17

*Collins v. New York Transit Authority*,
    305 F.3d 113 (2d Cir. 2002)..................................................................................14

*Contemporary Mission, Inc. v. U.S. Postal Serv.*,
    648 F.2d 97 (2d Cir. 1981)......................................................................................3

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    788 F. Supp. 2d 253 (S.D.N.Y. 2011)...................................................................15

*De la Cruz v. City of New York*,
    783 F. Supp. 2d 622 (S.D.N.Y. 2011).....................................................................5

# TABLE OF AUTHORITIES - cont'd

PAGE

*Douglass v. Rochester City School District*,
   873 F. Supp. 2d 507 (W.D.N.Y. 2012), *aff'd*, 522 F. App'x 5 (2d Cir. 2013) ........................5

*El Sayed v. Hilton Hotels Corp.*,
   627 F.3d 931 (2d Cir. 2010)...................................................................................................16

*Fried v. LVI Services, Inc.*,
   500 Fed. Appx. 39 (2d Cir. 2012)............................................................................................6

*Fuqua v. First Niagara Bank*,
   2014 U.S. Dist. LEXIS 17904 (W.D.N.Y. Feb. 9, 2014) ........................................................8

*Gordon v. New York City Bd. of Educ.*,
   232 F.3d 111 (2d Cir. 2000)...................................................................................................14

*Gorzynski v. Jetblue Airways Corp.*,
   596 F.3d 93 (2d Cir. 2010)..................................................................................................5, 6

*Greathouse v. JHS Sec. Inc.*,
   784 F.3d 105 (2d Cir. 2015)...................................................................................................15

*Gross v. FBL Financial Services, Inc.*,
   557 U.S. 167 (2009)................................................................................................................6

*Harris v. Forklift Systems, Inc.*,
   510 U.S. 17 ............................................................................................................................4

*Henry v. Wyeth Pharms., Inc.*,
   616 F.3d 134 (2d Cir. 2010)....................................................................................................8

*Icicle Seafoods, Inc. v. Worthington*,
   475 U.S. 709 (1986)..............................................................................................................17

*Inguanzo v. Hous. & Servs., Inc.*,
   2014 U.S. Dist. LEXIS 132197 (S.D.N.Y. Sept. 19, 2014) *aff'd* 621 Fed.
   Appx. 91 (2d Cir. 2015)........................................................................................................11

*Kessler v. Westchester County Dep't of Social Services*,
   461 F.3d 199 (2d Cir. 2006)..................................................................................................14

*Kulak v. City of New York*,
   88 F.3d 63 (2d Cir. 1996) .......................................................................................................3

## TABLE OF AUTHORITIES - cont'd

PAGE

*Lindsey v. Walgreen Co.*,
  615 F.3d 873 (7th Cir. 2010) ..............................................................................12

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)........................................................................................5, 14

*Meiri v. Dacon*,
  759 F.2d 989 (2d Cir. 1985), *cert. denied*, 474 U.S. 829, 106 S. Ct. 91, 88 L.
  Ed. 2d 74 (1985) ..................................................................................................3

*Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*,
  703 F. Supp. 2d 230 (E.D.N.Y. 2010) ..................................................................9

*Mullins v. City of New York*,
  626 F.3d 47 (2d Cir. 2010)..................................................................................14

*Rainey v. McWane, Inc.*,
  552 F. Supp. 2d 626 (E.D. Tex. 2008) *aff'd* 314 Fed. Appx. 693 (5th Cir.
  2009) ....................................................................................................................21

*Ramos v. Baldor Specialty Foods, Inc.*,
  687 F.3d 554 (2d Cir. 2012)................................................................................17

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997)..................................................................................3

*Simmons v. Sykes Enters.*,
  647 F.3d 943 (10th Cir. 2011) ............................................................................12

*Staub v. Proctor Hosp.*,
  562 U.S. 411, 131 S. Ct. 1186 (2011)..................................................................12

*Taddeo v. L.M. Berry & Co.*,
  2013 U.S. App. LEXIS 9579 (2d Cir. May 13, 2013) ...........................................6

*Tomassi v. Insignia Financial Group, Inc.*,
  478 F.3d 111 (2d Cir. 2007)..................................................................................8

*Ugactz v. UPS, Inc.*,
  2013 U.S. Dist. LEXIS 43481 (E.D.N.Y. Mar. 26, 2013).....................................6

*University of Texas Southwestern Med. Cen. v. Nassar*,
  133 S. Ct. 2517 (S. Ct. June 24, 2013) ...............................................................14

iv

## TABLE OF AUTHORITIES - cont'd

PAGE

*Van Zant v. KLM Royal Dutch Airlines*,
    80 F.3d 708 (2d Cir. 1996).............................................................................4

*Viola v. Philips Medical Sys. of North America*,
    42 F.3d 712 (2d Cir. 1994)............................................................................3

*Ya-Chen Chen v. City Univ. of N.Y.*,
    2015 U.S. App. LEXIS 18792 (2d Cir. Oct. 28, 2015)..............................16

STATE CASES

*Anderson v Young & Rubicam*,
    68 A.D.3d 430 (1st Dep't 2009) ...................................................................6

*Brannigan v. Bd. of Educ.*,
    18 A.D.3d 787 (2d Dep't 2005).....................................................................5

*DeKenipp v. State of N.Y.*,
    97 A.D.3d 1068 (3d Dep't 2012) ..................................................................6

*Ehmann v. Good Samaritan Hosp. Med. Ctr.*,
    2010 N.Y. Misc. LEXIS 4577 (N.Y. Sup. Ct. Sept. 17, 2010) *aff'd* 90 A.D.3d
    985 (2d Dep't 2011)......................................................................................6

*Massaro v. Department of Educ. of the City of N.Y.*,
    121 A.D.3d 569 (1st Dep't 2014) .................................................................5

FEDERAL STATUTES

29 U.S.C. § 207(a)(1)..............................................................................16, 17

29 U.S.C. § 213(a)(1)....................................................................................17

STATE STATUTES

N.Y. Lab. L. § 215(1)(a)(i) ...........................................................................15

N.Y. Labor Law § 650 *et seq.*................................................................16, 17

RULES

Fed. R. Civ. P. 56(c) and (e) ..........................................................................2

v

## <u>TABLE OF AUTHORITIES - cont'd</u>

<u>PAGE</u>

**REGULATIONS**

29 C.F.R. § 541.100(a)..............................................................................................................18

29 C.F.R. § 541.102 ..................................................................................................................18

29 C.F.R. § 541.105 ..................................................................................................................20

## PRELIMINARY STATEMENT

Defendant Fresenius Kabi USA, LLC (the "Company" or "Fresenius Kabi") is a pharmaceutical company that develops, manufactures and markets injectable pharmaceutical products, among other things. Because the pharmaceutical industry is heavily regulated by the federal Food and Drug Administration (FDA), it is critical that Fresenius Kabi maintain accurate records to comply with FDA regulations and ensure the quality and safety of its pharmaceutical products. The Company takes employee falsification of records very seriously and has terminated several employees in recent years for engaging in such conduct. Plaintiff John Roberts, a former production supervisor, is one of those employees.

A thorough and independent investigation – which included employee interviews, a review of video surveillance, and other evidence – confirmed that Roberts falsified a Master Batch Record, failed to follow proper protocol, and made false representations. While Roberts has tried to explain away his falsification, the videotape (and the lack of footage showing Roberts doing what he claimed to have done) does not lie. Roberts has no basis to challenge the decision to terminate him and no evidence to suggest that his age was a factor in the Company's decision. Indeed, when asked about the manager that his Complaint identified as the source of discriminatory animus towards him, Roberts testified that he did not feel that manager discriminated against him on the basis of age. The Court should therefore grant summary judgment to Fresenius Kabi on Roberts' age discrimination claims under New York State Human Rights Law (NYSHRL).

Roberts' overtime claims under New York Labor Law (NYLL) and the federal

Fair Labor Standards Act (FLSA) are equally as flawed.  As an exempt employee, Roberts was

not eligible for overtime pay.  At deposition, Roberts admitted that he performed all of the

functions listed in his job description, supervised 8 to 10 employees, and regularly had input on a

wide variety of personnel decisions.  Because Roberts clearly meets the requirements for the

executive exemption under federal and state law, his overtime claims should be dismissed.

## BACKGROUND

The facts and procedural history relevant to this motion are summarized in the

accompanying Declarations of Joseph S. Brown ("Brown Decl."), Christopher Smith ("Smith

Decl."), Peter Martinez ("Martinez Decl."), and the Statement of Undisputed Facts.  The Court is

respectfully referred to the foregoing for additional facts and supporting documentation relevant

to the instant motion.

## ARGUMENT

Fresenius Kabi makes this motion pursuant to Federal Rule of Civil Procedure

56(c) which provides that summary judgment is appropriate where "there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."  The

burden is upon the moving party to demonstrate the absence of a material factual dispute.[1]  Once

that burden is met, the non-moving party "must set forth specific facts showing that there is a

genuine issue for trial."[2]  Courts should not be reluctant to grant summary judgment in

---

[1]     Fed. R. Civ. P. 56(c).

[2]     Fed. R. Civ. P. 56(e).

appropriate cases as one of the principal purposes of the summary judgment rule is to isolate and

dispose of factually unsupported claims, thereby permitting courts to avoid protracted,

expensive, and harassing trials.[3]  The Second Circuit has noted that granting summary judgment

can be appropriate in employment cases.[4]  It is well-settled that conclusory statements,

conjecture, hearsay, and speculation are not sufficient to defeat summary judgment.[5]  "An

opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy,

spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions."[6]

And even in the employment context, "a plaintiff must provide more than conclusory allegations

of discrimination to defeat a motion for summary judgment."[7]  Here, Roberts has failed to

provide a scintilla of evidence that his termination was discriminatory.  Roberts' conclusory

allegations and conjecture are insufficient to defeat Fresenius Kabi's well-supported motion.

**POINT I.     ROBERTS CANNOT ESTABLISH A HOSTILE WORK
ENVIRONMENT BASED ON AGE**

Count I of the Complaint, under NYSHRL, alleges that Fresenius Kabi created a

hostile environment based on age.  To survive a motion for summary judgment on a hostile work

---

[3]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265
(1986); *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. denied*, 474 U.S. 829,
106 S. Ct. 91, 88 L. Ed. 2d 74 (1985).  *See also Viola v. Philips Medical Sys. of North
America,* 42 F.3d 712, 716-17 (2d Cir. 1994).

[4]     *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

[5]     *See Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999).  *See also Kulak v.
City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) ("conclusory statements, conjecture, or
speculation by the party resisting the motion will not defeat summary judgment.")

[6]     *Contemporary Mission, Inc. v. U.S. Postal Serv.*, 648 F.2d 97, 107 n.14 (2d Cir. 1981).

[7]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations and internal
quotations omitted).

environment claim, a plaintiff must show "(1) that his workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive as to alter the conditions of [his work environment, and (2) that a specific factual basis exists for imputing the conduct that created the hostile environment to the employer."[8]  "Conduct that is not severe or persuasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview."[9]  Title VII is not intended to create a code of civility for the workplace.  To prevail on a hostile work environment claim, a plaintiff must introduce evidence of hostile conduct that a reasonable juror could find was a result of the plaintiff's membership in a protected class.[10]

At deposition, Roberts testified that he had not heard any supervisor use a derogatory term in regards to his age.  He claimed that he recalled hearing Wayne Hopkins, Senior Manager of Production, tell Michael Hulbert "do you really want this kind of guy working for you?" and clarified that he "[does not] know if [Hopkins] was talking about age."[11]  On its face, this alleged comment has nothing to do with age and is not sufficient to infer discriminatory intent.  Hulbert testified that he once heard Hopkins use the term "old bastard," but Hulbert characterized it as "simple jokes" and "not necessarily referring to John [Roberts] but referring to a group."[12]  Hulbert said he never reported the alleged comment to management

---

[8]     *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).

[9]     *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21(1993).

[10]    *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999).

[11]    Brown Decl., Ex. C (Tr. 126:4-12).

[12]    Brown Decl., Ex. D (Tr. 45:8-20).

4

because it was a "group situation" and "seemed to have been in a joking manner."[13]  The conduct

cited by Roberts is not even remotely severe and pervasive enough to meet the applicable

standard.[14]  Accordingly, any hostile work environment claim based on age cannot survive

summary judgment.

### POINT II.    ROBERTS' AGE DISCRIMINATION CLAIM CANNOT SURVIVE SUMMARY JUDGMENT

Because Roberts has no direct evidence of discrimination, the three-part analytical

framework set forth in *McDonnell Douglas Corp. v. Green* is applied to evaluate his claims

under NYSHRL in Counts II and III.[15]

---

[13]     Brown Decl., Ex. D (Tr. 66:20 to 67:4).

[14]     *See Douglass v. Rochester City School District*, 873 F. Supp. 2d 507 (W.D.N.Y. 2012), *aff'd*, 522 F. App'x 5 (2d Cir. 2013) (granting summary judgment on hostile work environment claim where "the sporadic verbal altercations and social snubs plaintiff describes do not indicate conduct so continuous, threatening, or offensive as to comprise a hostile work environment."); *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 644 (S.D.N.Y. 2011) (allegations of "reassignment to [a new work team], [] changes in his work schedule, [] alleged increased scrutiny of his work, and [a supervisor's] stray remarks regarding his seniority and physical fitness (or lack thereof)" were cumulatively insufficient to support a hostile work environment claim); *Massaro v. Department of Educ. of the City of N.Y.*, 121 A.D.3d 569, 570 (1st Dep't 2014) (affirming dismissal of hostile work environment claim based on age because "defendants' alleged behavior amounts to "no more than petty slights or trivial inconveniences.")

[15]     In cases without direct evidence of discriminatory animus — such as here — the Plaintiff must prove discrimination through circumstantial evidence and the *McDonnell Douglas* burden-shifting method.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973).  The law governing NYSHRL claims has been held to be identical to that governing claims made under the ADEA.  *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 n.6 (2d Cir. 2010); *Brannigan v. Bd. of Educ.*, 18 A.D.3d 787, 789 (2d Dep't 2005).

A plaintiff establishes a *prima facie* case of discrimination by showing that: (1) he was within the protected age group; (2) he was qualified for the position; (3) he suffered an adverse action; and (4) that such action occurred under circumstances giving rise to an inference of discrimination.[16]

If the plaintiff makes this showing, the burden shifts to the defendant to articulate a legitimate and nondiscriminatory reason for its alleged conduct.[17]  Once such a reason is provided, the plaintiff can no longer rely on a *prima facie* case and must show more than possible age bias:  he "is required to adduce sufficient evidence to permit a reasonable jury to find that 'but for' defendant's age bias, he would not have been terminated."[18]  In other words, a plaintiff cannot survive summary judgment by showing that age was just a contributing or motivating factor for the challenged adverse employment action.[19]

Fresenius Kabi concedes that Roberts can satisfy the first three elements of his *prima facie* case of discrimination.  As explained below, Roberts cannot establish circumstances giving rise

---

[16]     *Id.* at 106.

[17]     *Id.*

[18]     *Fried v. LVI Services, Inc.*, 500 Fed. Appx. 39, 41 (2d Cir. 2012) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009)).

[19]     *Taddeo v. L.M. Berry & Co.*, 2013 U.S. App. LEXIS 9579, *4 (2d Cir. May 13, 2013). A number of state and federal courts have analyzed NYSHRL claims under "but for" standard.  *See*, *e.g.*, *Ugactz v. UPS, Inc.*, 2013 U.S. Dist. LEXIS 43481, *58 n . 28 (E.D.N.Y. Mar. 26, 2013) (applying "but for" standard to ADEA and NYSHRL claims; *Ehmann v. Good Samaritan Hosp. Med. Ctr.*, 2010 N.Y. Misc. LEXIS 4577, *21-22 (N.Y. Sup. Ct. Sept. 17, 2010) (same) *aff'd* 90 A.D.3d 985 (2d Dep't 2011); *Anderson v Young & Rubicam*, 68 A.D.3d 430 (1st Dep't 2009) (affirming use of jury charge using "but for" standard under *Gross*).  *But see DeKenipp v. State of N.Y.*, 97 A.D.3d 1068, 1070 (3d Dep't 2012) (declining to decide whether analysis under NYSHRL has changed, post-*Gross*).

to an inference of discrimination much less overcome Fresenius Kabi's legitimate, non-discriminatory reasons for terminating his employment.

### A.    Roberts May Not Establish an Inference of Discrimination Using Stray Remarks

As noted above, Roberts testified that he had not heard any supervisor use a derogatory term in regards to his age.  He claimed that he recalled hearing Wayne Hopkins, Senior Manager of Production, tell Hulbert "do you really want this kind of guy working for you?" and clarified that he "[does not] know if [Hopkins] was talking about age."[20]  This comment has nothing do to with age.  Instead, Roberts may now point to the testimony of Hulbert who claimed that he once heard Wayne Hopkins use the term "old bastard."  Hulbert characterized the comment as "simple jokes" and "not necessarily referring to John [Roberts] but referring to a group."[21]  Hulbert said he never reported this alleged comment to management because it was a "group situation" and "seemed to have been in a joking manner."[22]  The alleged comment attributed to Hopkins is a classic stray remark and insufficient to establish a *prima facie* case of discrimination.

As the Second Circuit has observed, "remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the

---

[20]      Brown Decl., Ex. C (Tr. 126:4-12).

[21]      Brown Decl., Ex. D (Tr. 45:8-20).

[22]      Brown Decl., Ex. D (Tr. 66:20 to 67:4).

remark."[23]  The remark must be considered in context:  "the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination."[24]  In determining whether a remark is probative, courts "have considered four factors: (1) who made the remark (*i.e.*, a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (*i.e.*, whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (*i.e.*, whether it was related to the decision-making process)."[25]

All four factors weigh against a finding that Hopkins alleged comments are indicative of discriminatory intent by Fresenius Kabi.  Hulbert could not identify a timeframe when Hopkins allegedly made the comment, acknowledged it was made in a joking manner and not directed at Roberts, and not connected in anyway with an employment decision.  At best, Hopkins alleged comment is an inadmissible stray remark and not sufficient to defeat summary judgment.[26]

---

[23]  *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007).

[24]  *Tomassi*, 478 F.3d at 115.

[25]  *Henry v. Wyeth Pharms., Inc.,* 616 F.3d 134, 149 (2d Cir. 2010).

[26]  *See Fuqua v. First Niagara Bank*, 2014 U.S. Dist. LEXIS 17904, *13 (W.D.N.Y. Feb. 9, 2014) (dismissing discrimination claim where plaintiff "can point to only a handful of stray, mostly harmless comments made well before he was eventually fired."); *Callistro v. Cabo*, 2013 U.S. Dist. LEXIS 11176, *19-21 (S.D.N.Y. Jan. 25, 2013) (a decision-maker allegedly calling the plaintiff a "fucking Christian" and a "fucking dog" were stray remarks as the decision-maker's tendency to make such comments occurred at least one month before any discussion of terminating the plaintiff's employment occurred).

**B.      Roberts May Not Establish a *Prima Facie* Case of Age Discrimination
          with Statistical Evidence**

Paragraph 19 of the Complaints alleges in the year prior to his termination

Fresenius Kabi "discharged approximately twenty (20) long service employees with ages ranging

from forty-five to sixty years."[27]  While Fresenius Kabi remains skeptical about the quality of the

evidence that Roberts can muster in opposition to summary judgment on this point, such

statistical evidence is insufficient to establish a *prima facie* case and defeat summary judgment.[28]

**C.      Fresenius Kabi Had a Legitimate, Non-Discriminatory Reason for
          Terminating Roberts When He Falsified a Company Document**

Even assuming Roberts could establish a *prima facie* case of discrimination,

Roberts' falsification of a business record – as explained more fully in the Declarations of

Christopher Smith, Compliance Manager, and Peter Martinez, Plant Human Resources Manager

– constitutes a legitimate, non-discriminatory reason for his termination.

On May 11, 2013, Roberts falsified a Master Batch Record when he documented

that he verified the number of unloaded trays from the Lyophilization room and performed a

physical area inspection ("PAI") when in fact he did not do either.  During the investigation,

Roberts claimed that he verified the unloading of the vial trays and performed the PAI at a later

time through an acceptable practice of verifying through video monitoring via the Lyophilization

control room video surveillance.  The investigation determined that neither contention was true –

Roberts did not verify the number of trays nor did he perform a PAI through the video

---

[27]      Brown Decl., Ex. A at ¶ 19.

[28]      *See Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 245 (E.D.N.Y.
          2010) ("[S]tatistical proof alone cannot ordinarily establish a *prima facie* case of
          disparate treatment.").

surveillance review.  In addition to employee interviews, the video of the Lyophilization control

room confirmed that Roberts entered the room and signed some documents but he never used the

video equipment so he could not have counted the trays or performed a PAI.  The entry/exit card

access system records do not show Roberts in the Lyophilization control room for more than 1

minute, an insufficient amount of time to conduct the stated reviews.[29]

A detailed written report was issued by an independent investigator, Christopher

Smith, which determined that Roberts falsified the original document, failed to follow proper

protocol, and made false representations.  As summarized in the Detail Report-Deviation:

> The individual who documented the verification of the line
> clearance said that verification of the line clearance was performed
> using the video surveillance system in the Lyophilizer control
> room. However, there is no video evidence the verifier watched the
> line clearance as he was never present in the lyophilization control
> room where they indicated this verification occurred for more than
> one minute.

> The verifier was in violation of cGMP when he did not physically
> count the number of trays and signed the verification of the line
> clearance on the M8 batch record document.[30]

The Martinez Declaration furthers explains why employee falsification of

Company records is treated very seriously by Fresenius Kabi.  It is critical that Fresenius Kabi

maintain accurate records to comply with FDA regulations and ensure the quality and safety of

its pharmaceutical products.  As such, Fresenius Kabi terminated eight employees in recent years

---

[29]      Smith Decl., ¶ 17.

[30]      Smith Decl., Ex. 2 at D00510.

who falsified Company documents.[31]  It is well-settled that terminating an employee for

falsifying a company record constitutes a legitimate, non-discriminatory/retaliatory reason for

termination.[32]

### D.   Roberts Has No Evidence to Support a Finding That His Termination Was a Pre-text for Age Discrimination

Roberts cannot establish that his termination was pre-textual for several reasons.

First, Roberts conceded that he has no evidence of discrimination.  Roberts

testified that he does not feel that Wayne Hopkins discriminated against him on the basis of age.

He alleged Hopkins discriminated against him, but Roberts was not sure why.[33]  Moreover, the

absence of any alleged derogatory comments concerning age is addressed above.

Second, any attempt by Roberts to link his termination to any alleged conduct by

Hopkins is meritless.  Roberts' documentation falsification issue was initiated by Paul Ziuko,

MQA Supervisor.[34]  Hopkins had nothing to do with initiating the deviation investigation.

Third, there is no evidence to suggest that Hopkins had any role in the

independent investigation conducted by Christopher Smith, Compliance Supervisor.  In fact, it

---

[31]   Martinez Decl., ¶¶ 45-47.

[32]   *See Inguanzo v. Hous. & Servs., Inc.,* 2014 U.S. Dist. LEXIS 132197, *60 n. 44 (S.D.N.Y. Sept. 19, 2014) *aff'd* 621 Fed. Appx. 91 (2d Cir. 2015) (finding falsification of records to be a legitimate, nondiscriminatory basis for termination); *Cai v. Wyeth Pharm., Inc.*, 2012 U.S. Dist. LEXIS 38484, *25 (S.D.N.Y. Mar. 19, 2012) ("Courts have uniformly held that falsifying company documents is a legitimate, non-discriminatory reason for termination.").

[33]   Brown Decl., Ex. C (Tr. 73:17 to 74:6).

[34]   Smith Decl., ¶ 19 and Ex. 1.

was Hopkins who suggested that the team of investigators led by Smith conduct the investigation because of a potential conflict of interest.[35]

Fourth, Hopkins did not have the final recommendation on whether or not to terminate Roberts.  Rather, the ultimate termination decision was made by Martinez with approval by his supervisor, James Callanan, Senior Vice President of Human Resources.[36] Roberts admitted that he had no reason to believe that Martinez discriminated against him on the basis of age.[37]  Martinez carefully analyzed the Audit Trail and Detail Report-Deviation in making his recommendation that Roberts be terminated.[38]  As noted by the Supreme Court in *Staub v. Proctor Hosp.*, "if the employer's investigation results in an adverse action for reasons unrelated to the supervisor's original biased action, then the employer will not be liable.[39]  Here, there is no "original biased action" that Roberts can use to support his age discrimination claim.

Fifth, Roberts has no grounds to challenge the Investigator's conclusion that he falsified a record.  Roberts' defense of his conduct is not consistent with the Smith's review of

---

[35]     Smith Decl., ¶ 20.

[36]     Martinez Decl., ¶ 40.

[37]     Brown Decl., Ex. C (Tr. 123:17 to 124:22).

[38]     Martinez Decl., ¶ 37.

[39]     *Staub v. Proctor Hosp.,* 562 U.S. 411, 131 S. Ct. 1186, 1193 (2011).  *See also Simmons v. Sykes Enters.*, 647 F.3d 943, 949 (10th Cir. 2011) ("T]he undisputed evidence in the record supports the employer's assertion that it fired the employee for its own unbiased reasons that were sufficient in themselves to justify termination . . . ."); *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010) ("Even if Lindsey could show that Bamfo-Agyei provided Jenkins with biased information, Walgreens presented undisputed evidence that Jenkins did not rely solely on what she learned from Bamfo-Agyei. . . . Because the record reveals that Jenkins did not rely solely on Bamfo-Agyei's allegations, Lindsey cannot make out her cat's paw theory.").

the master surveillance security system in the Lyophilization control room and the entry/exit card

access system records to the Lyophilization control room.[40]  For his part, Roberts reviewed the

video surveillance produced by the Company, and did not see any footage that supported his

theory.[41]

Sixth, the undisputed evidence shows that eight employees have been terminated

in recent years, including two who were under the age of 40.[42]  Roberts can hardly say that he

was singled out for termination on the basis of age when other employees who have falsified

records have likewise been terminated.

For these reasons, Fresenius Kabi requests that Roberts' age discrimination be

dismissed.

### POINT III.    ROBERTS HAS NO EVIDENCE TO SUPPORT HIS RETALIATION CLAIM

Counts III (NYSHRL), VI (NYLL), and VI (FLSA) assert that Roberts was retaliated

against for engaging in protected activity when he allegedly opposed age discrimination and unfair

overtime practices.  In order to demonstrate a *prima facie* claim of retaliation, a plaintiff must

demonstrate that: (1) he was engaged in protected activity; (2) the employer was aware of that

activity; (3) the employee suffered an adverse employment action, and (4) there was a causal

---

[40]      Smith Decl., ¶ 24 and Ex. 2 at D00510.

[41]      Brown Decl., Ex. C (Tr. 103:21 to 104:11).

[42]      Martinez Decl., ¶¶ 46-47.

connection between the protected activity and the adverse employment action.[43]  Just like the

NYSHRL claims, the FLSA and NYLL claims are subject to the three-step burden shifting

framework establish by *McDonnell Douglas.*[44]  No longer can a plaintiff survive summary judgment

by showing that protected activity was a "motivating factor" for the adverse employment action.[45]

In *University of Texas Southwestern  Medical Center v. Nassar*, the Supreme Court held that in order

to succeed in a claim of retaliation under Title VII, an employee must prove that the challenged

adverse employment action that is the subject of the suit would not have occurred "but for" the

desire by the employer to retaliate against the employee.[46]

      First, Plaintiff never complained of age discrimination during his employment.

The Complaint omits any allegation that he complained about age discrimination, and Roberts

admitted that he never complained about age discrimination prior to his termination.[47]  As such,

Roberts has no basis for his claim that he engaged in protected activity to support a retaliation

claim under NYSHRL.

      Likewise, the record is devoid of Roberts making any specific complaint about his

overtime.  Roberts could only recall two instances where he was asked to provide additional

---

[43]    *See Kessler v. Westchester County Dep't of Social Services*, 461 F.3d 199, 204 (2d Cir. 2006); *Collins v. New York Transit Authority*, 305 F.3d 113, 118 (2d Cir. 2002); *Gordon v. New York City Bd. of Educ.,* 232 F.3d 111, 113 (2d Cir. 2000).

[44]    *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010).

[45]    *University of Texas Southwestern Med. Cen. v. Nassar*, 133 S. Ct. 2517 (S. Ct. June 24, 2013).

[46]    *Id.* at 2534.

[47]    Brown Decl., Ex. C (Tr. 129:1 to 130:5).

explanation as part of his request for overtime authorization.[48]  He could not recall whether he

had any communications with Human Resources about the instances where an overtime request

was not approved for the full amount.[49]  Roberts could not recall any specific complaints that he

made about his overtime being denied.[50]  In 2012-2013, he could not recall any instances where a

supervisor or manager refused to sign off on his request for overtime.[51]  Based on Roberts' vague

testimony and limited recall, there is no factual basis for him to establish that his "complaint"

was "sufficiently clear and detailed for a reasonable employer to understand it, in light of both

content and context, as an assertion of rights protected by the statute and a call for their

protection."[52]

      Even assuming Roberts could establish that he engaged in protected activity for

purposes of his age and overtime retaliation claims, this would not be sufficient to establish that

Fresenius Kabi's stated reasons for termination were a pre-text for retaliation.  "The temporal

proximity of events may give rise to an inference of retaliation for the purposes of establishing a

---

[48]     Brown Decl., Ex. C (Tr. 83:10-15).

[49]     Brown Decl., Ex. C (Tr. 35:17 to 36:11).

[50]     Brown Decl., Ex. C (Tr. 42:21 to 43:10).

[51]     Brown Decl., Ex. C (Tr. 28:8 to 31:3).

[52]     *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 117 (2d Cir. 2015). Similarly, under the
NYLL, an employer may not retaliate against any employee, including by discharging
the employee, because "such employee has made a complaint to his or her employer, or
to the commissioner or his or her authorized representative, . . . that the employer has
engaged in conduct that the employee, reasonably and in good faith, believes violates
any provision of this chapter." N.Y. Lab. L. § 215(1)(a)(i). A plaintiff must plead that
"while employed by the defendant, [the plaintiff] made a complaint about the employer's
violation of the law and, as a result, was terminated or otherwise penalized,
discriminated against, or subjected to an adverse employment action." *Copantitla v.
Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011).

prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."[53]  While Roberts claims that he complained about overtime at some unspecified point in July 2013, the Detail Deviation-Report investigation was commenced on May 11, 2013 by Paul Ziuoko, and the Investigator's report already concluded that Roberts falsified a document.  Thus, Roberts cannot link his termination to his vague reference to overtime being denied or opposition to age discrimination.  In sum, Roberts has no evidence to create a disputed issue as to whether his nebulous or non-existent complaints were the "but for" cause of his termination.

### POINT IV.   ROBERTS' OVERTIME CLAIMS UNDER FEDERAL AND STATE LAW CANNOT SURVIVE SUMMARY JUDGMENT

Counts V and VI allege that Fresenius Kabi violated the FLSA and NYLL by failing to pay him overtime.  Roberts' job as a Production Supervisor, however, was clearly exempted from state and federal overtime laws.

Subject to certain exceptions, the FLSA, and the analogous provisions under NYLL, require that employees who work more than 40 hours per week be compensated for overtime work at a rate of one and one-half times their regular rate of pay.[54]  Employees are exempt from the overtime provisions, however, if they are "employed in a bona fide executive . .

---

[53]   *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).  *See also Ya-Chen Chen v. City Univ. of N.Y.*, 2015 U.S. App. LEXIS 18792, *30 (2d Cir. Oct. 28, 2015) ("We have long held that 'temporal proximity' between a protected complaint and an adverse employment action 'is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext'").

[54]   29 U.S.C. § 207(a)(1); N.Y. Labor Law § 650 *et seq.*; N.Y. Comp. Code R. & Regs. tit. 12, §§ 142-2.2, 146-1.4.

. capacity."[55]  "The exemption question" under the FLSA "is a mixed question of law and fact."[56]
"The question of how the [employees] spent their working time . . . is a question of fact. The
question whether their particular activities excluded them from the overtime benefits of the
FLSA is a question of law . . . ."[57]

Section 7(a)(1) of the FLSA provides that, subject to certain exceptions, an
employee who works more than forty hours per week must receive compensation for
"employment in excess of the hours above specified at a rate not less than one and one half times
the regular rate at which he is employed." [58]  One exception is that the overtime-pay rule "shall
not apply with respect to . . . any employee employed in a bona fide executive, administrative, or
professional capacity."[59]  The FLSA does not define "bona fide executive, administrative, or
professional" employment, and instead directs the Secretary of Labor to "define[] and delimit[]"
those terms "from time to time by regulations."[60]  Roberts clearly meets the requirements for the
executive exemption under the FLSA and NYLL.

---

[55]     29 U.S.C. § 213(a)(1);  *see also* NYLL § 651(5)(c); N.Y. Comp. Code R. & Regs. tit. 12,
§§ 142-2.2, 142-2.14(c)(4), 146-3.2(c)(1).  "Because New York's overtime provisions
mirror and/or expressly adopt federal wage law, federal courts evaluate New York's
executive exemption by reference to the Fair Labor Standards Act of 1938, 29 U.S.C. §
201 et seq., and its attendant regulations, set forth in the Code of Federal Regulations."
*Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 289 n.5 (E.D.N.Y. 2010)

[56]     *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554 (2d Cir. 2012) (citing *Myers v.
Hertz Corp.*, 624 F.3d 537, 548 (2d Cir. 2010)).

[57]     *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986).

[58]     29 U.S.C. § 207(a)(1).

[59]     29 U.S.C. § 213(a)(1).

[60]     *Id*.

17

The Department's regulations defining the terms of the FLSA's executive exemption provide that "[t]he term 'employee employed in a bona fide executive capacity' . . . shall mean any employee":

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[61]

Management activities are further illustrated by the regulation:

> Generally, "management" includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.[62]

As explained below, Fresenius Kabi easily meets the Department's test.

---

[61]     29 C.F.R. § 541.100(a).

[62]     29 C.F.R. § 541.102

**A.      Roberts Was Paid On a Salary Basis**

There is no dispute that Roberts' base salary was $69,255.88 and he was paid on a salary basis, with a pre-determined amount of compensation each pay period.[63]

**B.      Roberts' Primary Duty Was Management of the Aseptic Preparation Area**

Roberts' primary duty as a Production Supervisor was the supervision of the Aseptic Preparation Area, a customarily recognized department or subdivision of the Fresenius Kabi Grand Island facility.[64]

Roberts described his supervisory duties as follows: "making sure they were doing their job properly and following all rules, making the paperwork was correct, filling out any reports that had to be done. If there were any investigations, we would write the investigations on the incident.  That's it in a nutshell."[65]  A review of Robert's job description – which Roberts admitted was accurate – confirms that management was his only duty.  As stated in the job description, a Production Supervisor:

1) Coordinates execution of production schedules based upon direction from production manager.

2) Interacts with departmental supervisors and support groups on compliant application of methods, standards, safety programs, and cGMP's.  Completes all batch related documentation according to site release standards.

3) Assumes responsibility of their assigned department during course of shift.

---

[63]     Martinez Decl., ¶ 25.

[64]     Martinez Decl., ¶ 15; Brown Decl., Ex. C (Tr. 18:16-22).

[65]     Brown Decl., Ex. C (Tr. 20:19 to 21:4).

4)  Defines and recommends corrective and preventative actions.

5)  Contributes to development of annual operating budget.

6)  Regularly evaluates operations personnel.

7)  Coordinates application of operators in assigned areas of responsibility.

8)  Develops and executes training and follow-up programs to ensure adequate staff development.

9)  Establishes effective communication methods to provide continuity of information across all shifts.

10) Assumes other duties as assigned.

11) Provides a monthly report on performance.[66]

## C.   Roberts Directly Supervised the Work of Eight to Ten Employees

Roberts customarily and regularly directed the work of two or more other employees.  In fact, Roberts testified that he regularly directed the work of 8 to 10 employees and indirectly supervised up to 25 employees.[67]

## D.   Roberts Made Suggestions and Recommendations Regarding a Variety of Employment Decisions

Under the regulations, "[a]n employee's suggestions and recommendations may still be deemed to have "particular weight" even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status."[68]  Roberts made suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees that

---

[66]     Martinez Decl., ¶ 14 and Ex. D; Brown Decl., Ex. C (Tr. 23:17 to 26:9).

[67]     Brown Decl., Ex. C (Tr. 20:2-18; 27:14-23).

[68]     29 C.F.R. § 541.105.

were given particular weight.  By his own admission, Roberts conducted employee performance evaluations and disciplined employees, from verbal warnings to termination.  He interviewed job candidates and made recommendations on hiring, throughout his tenure as a Production Supervisor.[69]

In summary, several districts courts have held that production supervisors and shift supervisors meet the test for the executive exemption. For example, in *Beauchamp v. Flex-N-Gate LLC*, the district court held that a production supervisor in an automotive parts plan satisfied the executive exemption.[70]  Similarly, in *Rainey v. McWane, Inc.,* the court held that production supervisors in a foundry where cast iron products were manufactured were bona fide executives under the FLSA.[71] A similar result was obtained in *Burson v. Viking Forge*, where the Northern District of Ohio concluded that a shift supervisor in a forging plaint met the executive exemption.[72]  Based on Roberts' admissions, his job description, the testimony of Michael Hulbert, and declaration of Peter Martinez, this Court should likewise find that Roberts was an exempt employee and dismiss his federal and state overtime claims as a matter of law.

## CONCLUSION

Based on the foregoing, Fresenius Kabi respectfully requests that its motion for summary judgment be granted, and Plaintiff's Complaint be dismissed in its entirety.

---

[69]   Brown Decl., Ex. C (Tr. 21:5 to 22:19; 130:19 to 131:15).  *See also* Martinez Decl., ¶¶ 18-21 and Ex. E and F.

[70]   *Beauchamp v. Flex-N-Gate LLC*, 357 F. Supp. 2d 1010 (E.D. Mich. 2005).

[71]   *Rainey v. McWane, Inc.,* 552 F. Supp. 2d 626 (E.D. Tex. 2008) *aff'd* 314 Fed. Appx. 693 (5th Cir. 2009).

[72]   *Burson v. Viking Forge Corp.*, 661 F. Supp. 2d 794 (N.D. Ohio 2009).

Dated:  February 19, 2016

**HODGSON RUSS LLP**
*Attorneys for Defendant*


By: s/Joseph S. Brown
          Joseph S. Brown, of counsel
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000
*jsbrown@hodgsonruss.com*

22